```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
KiSKA CONSTRUCTION CORPORATION-              :
USA,                                          :     04 Civ. 9252 (CSH)
                                              :
                    Plaintiff,                :
                                              :
            -against-                         :     MEMORANDUM
                                              :     OPINION AND ORDER
G & G STEEL, INC.,                            :
                                              :
                    Defendant.                :
------------------------------------------------------------- x
```

HAIGHT, Senior District Judge:

In this diversity action,[1] plaintiff KiSKA Construction Corporation-USA ("KiSKA") alleges breach of contract claims against defendant G & G Steel, Inc. ("G&G"), for G&G's alleged failure to manufacture and deliver a replacement swing bridge in timely fashion.

## I. PRELIMINARY

Three motions are presently pending. Defendant G&G has filed a motion pursuant to Rule 12(b)(6), Fed. R. Civ. P., to dismiss plaintiff KiSKA's third cause of action, and a motion pursuant to Rule 12(e) for a more definite statement as to plaintiff's second cause of action. G&G has also moved to admit two out-of-state attorneys *pro hac vice*. Plaintiff has cross-moved to amend its complaint pursuant to Rule 15(a).[2]

---

[1] According to plaintiff's initial and proposed amended complaints, plaintiff is a Delaware corporation with its principal place of business in New York. Defendant is an Alabama corporation with its principal place of business in that State. Plaintiff alleges damages in excess of $75,000. Those allegations are sufficient to establish subject matter jurisdiction in this Court under 28 U.S.C. § 1332(a)(1).

[2] Unaccountably, plaintiff captions its proposed amended complaint as "First Amended Complaint *As Of Right*" (emphasis added). Rule 15(a) provides that a party may amend its

1

Defendant does not appear to oppose plaintiff's motion to amend its complaint, and I see no reason why leave should not be granted, given Rule 15(a)'s mandate that "leave [to amend a pleading] shall be freely given when justice so requires." Accordingly plaintiff KiSKA's motion for leave to file and serve an amended complaint in the form attached to its motion papers is granted.

Defendant moves for the admission to the bar of this Court *pro hac vice* of two out-of-state attorneys: Gayle LaRece Douglas, Esq., and Elliott Britton Monroe, Esq. These attorneys have submitted the documents required by Local Civil Rule 1.3(c) and the motion is granted as to them both.

Defendant has also moved pursuant to Rule 12(e), Fed. R. Civ. P., for a more definite statement with respect to the second of plaintiff's three causes of action. That motion was addressed to plaintiff's initial complaint, in which the allegations comprising the second cause of action were of the bare bones variety. The allegations supporting the second cause of action in the amended complaint, which I have given plaintiff leave to file and serve, are much more detailed. In that circumstance, I deny defendant's motion for a more definite statement as moot, without prejudice to renewal if defendant, having considered the amended complaint, still regards itself as entitled to relief under Rule 12(e) with respect to the second cause of action.

It follows from these preliminary dispositions that the motion remaining for consideration is that of defendant G&G to dismiss plaintiff KiSKA's third cause of action. Unlike the plaintiff's second cause of action, whose allegations were expanded by the amended complaint, the third cause

---

pleading "once as a matter of course at any time before a responsive pleading is served . . . . Otherwise a party may amend the party's pleading only be leave of court or by written consent of the adverse party . . ." Plaintiff filed its initial complaint on November 23, 2004. Defendant filed its answer on December 17, 2004. Accordingly plaintiff was required to make a motion for leave of the Court to file and serve an amended complaint, as it has in fact done.

of action pleaded in the amended complaint repeats the wording of the initial complaint.[3] Consideration of this motion to dismiss requires a recitation of the factual background.

## II. BACKGROUND

The following facts are taken from plaintiff's amended complaint.

KiSKA is a construction corporation. Some time prior to November 5, 2001, KiSKA won a publicly bid contract with the Department of Transportation of the City of New York ("DOT") for the replacement of the Third Avenue Bridge over the Harlem River. KiSKA in turn entered into a written agreement with G&G, dated November 5, 2001, whereby G&G would fabricate and deliver "a new replacement swing bridge" for the sum of $12,980,000, to be paid by KiSKA. Amended Complaint ("Am. Compl."), ¶ 5. Specifically, G&G contracted "to fabricate and deliver to the job site a swing span structural steel replacement bridge with various components and appurtenances," as described in the contract specifications. *Id.* at ¶ 6. Following a redesign of the project by DOT, KiSKA and G&G executed an addendum to their agreement which "modified the schedule for G&G's work, so that fabrication and delivery to the job site of a new swing bridge was required by October 31, 2003." *Id.* at ¶ 5. The contract between KiSKA and G&G provided that time was of the essence. *Id.* at ¶ 7.

G&G failed to deliver the bridge to the job site by October 31, 2003. It did not do so until July 8, 2004. KiSKA alleges that as direct result of this failure, it would be unable to make its next promised deadline with the DOT, which is to complete all work required under "Contract Milestone 'D'" by May 22, 2005, DOT's next deadline. Consequently, KiSKA will fail to collect an incentive

---

[3] The only change is that the amended complaint alleges three "claims," whereas the initial complaint alleged three "causes of action." Hereafter I will use the designation "claim."

bonus from the DOT valued at $4,875,000. In addition, KiSKA will suffer various costs and expenses, such as overtime and weekend work, which total $3,117,818. *See* Am. Compl. ¶¶ 10-32. Together, KiSKA asserts for its first claim that its damages resulting from G&G's breach amount to $7,992,818.

KiSKA's second claim concerns further alleged contractual breaches committed by G&G, as a result of which KiSKA was forced to expend funds, and for which it "backcharged G&G's account." Am. Compl. ¶¶ 33-78. KiSKA's second claim alleges damages in the amount of $505,570.

In addition to KiSKA's claims against G&G, G&G had claims of its own against KiSKA. G&G's claims against KiSKA lie at the heart of KiSKA's third claim pleaded in the amended complaint, which is the subject of G&G's motion to dismiss.

The parties grouped G&G's claims into three categories: (1) "Claim No. 1," (2) the "Control House Claim," and (3) the "Agreed Extra Work" claim. G&G asserted that these claims amounted to $820,716, $571,291, and $365,278 in damages respectively, for a total amount of $1,757,285. Evidently, these claims by G&G do *not* arise out of the stipulations found in the original Contract between the parties, but are "extras" (to use G&G's language) requested by KiSKA in connection with the construction of the bridge.

Until these claims were settled, G&G threatened to refuse to deliver bridge components and appurtenances necessary to complete, test, and make the replacement swing span bridge operational. Am. Compl. ¶ 84. By September 2004, KiSKA offered to settle G&G's claims against it for a sum total of $780,000. G&G turned down that offer. Instead, on October 1, 2004, the parties settled all of G&G's claims for the amount of $1.5 million, paid by KiSKA to G&G. *See* Partial Settlement

Agreement and Release By and Between KiSKA and G&G, Oct. 1, 2004 (the "Settlement Agreement"). That there was a settlement in that amount is not disputed. What *is* disputed, is whether KiSKA agreed to the settlement as a result of duress.

KiSKA arrived at a "considered opinion by October 2004, that it was impracticable or futile in the circumstances for it to resort to legal remedies available to it," Am Compl. ¶ 85, which led to the conclusion that KiSKA had no choice but to settle with G&G for $1.5 million. KiSKA alleges several pertinent considerations. First, it estimated that it would cost $500,000 in excess of the value of the items to purchase materials elsewhere, as well as an additional 12 months to secure delivery and installation of the same. Adding those expenses on top of penalty fees and extra overhead, KiSKA estimated that it would cost as much as $6 million to secure purchase of materials elsewhere, if G&G failed to deliver. Second, KiSKA anticipated that a delay in completion of the bridge project would result in a negative performance rating that would put at risk KiSKA's ability to secure future work from the City of New York. Third, KiSKA anticipated that an additional year of delay would result in intolerable danger and inconvenience to the public. Based upon these considerations, KiSKA alleges that it had no choice but to agree to G&G's terms of settlement. Evidently, KiSKA does not dispute G&G's third claim against it--that is, the so called "Agreed Extra Work" claim in the amount of $365,278. It does, however, dispute G&G's right to retain the balance of the settlement payment, on the ground that G&G procured the settlement amount through duress. KiSKA's third claim is for the amount of that balance, namely, $1,134,722. G&G moves to dismiss that claim. KiSKA opposes the motion.[4]

`
### III. DISCUSSION

---

[4] G&G's motion to dismiss is not directed at KiSKA's first and second claims.

A.  *Whether G&G's motion is a motion to dismiss or a motion for summary judgment*

An initial procedural question I must consider is whether G&G's motion should be characterized, as G&G contends, as a motion under Rule 12(b)(6) to dismiss KiSKA's third claim "for failure to state a claim upon which relief can be granted," or, as KiSKA's papers suggest, as a motion under Rule 56 for partial summary judgment.

The last sentence of Rule 12(b) provides:

> If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment, and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

KiSKA contends that G&G has transformed its motion to dismiss into a motion for summary judgment by "having presented matters outside the pleading." Plaintiff's Memorandum of Law Opposing Motion for Summary Judgment Dismissing the Third Cause of Action, Feb. 4, 2004, at 1. KiSKA is wrong.

For purposes of Rule 12(b), a complaint is "deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (citations omitted). "[T]he harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered,." *id.* at 153; the quoted provision from Rule 12(b) is intended to protect a non-moving plaintiff from that harm. However, "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Id.* (citation and internal quotation marks omitted). The Second Circuit reiterated in

*Chambers* that "a plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion." *Id.* (emphasis in original).

G&G's motion to dismiss includes two exhibits: KiSKA's initial complaint, and the Settlement Agreement. *See* Affirmation of Frank E. De Grim in Support of Motion Pursuant to Rules 12(e) and 12(b)(6), Dec. 17, 2004, Exs. 1 & 2. Clearly KiSKA's complaint is itself a pleading, and G&G's reference to it could not transform its motion to dismiss into a motion for summary judgment.[5]

It is also clear that KiSKA relied on the Settlement Agreement in formulating its third claim. KiSKA makes specific reference to it in its Amended Complaint, ¶ 88.[6] Without the Settlement Agreement, and KiSKA's ensuing payment of $1.5 million, it would have no claim for duress against G&G. KiSKA also participated in the drafting of the agreement, and it is signed by a KiSKA officer. Courts frequently consider contracts like this one in a motion to dismiss. *See, e.g., Chambers*, 292 F.3d at 153 ("The contracts considered by the District Court in this case comfortably meet this test because they are integral to the Amended Complaint."); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that a written agreement, entered into by both parties, could have been considered in a motion to dismiss); *Discover Group, Inc. v. Lexmark Int'l, Inc.*, 333 F.Supp.2d 78, 83 (E.D.N.Y. 2004) (same). Therefore, I consider the Settlement Agreement part of KiSKA's complaint, and G&G's reference to it does not transform its motion into one for summary judgment.

---

[5] The settlement agreement itself is accompanied by its own exhibits marked A - D.

[6] *See also*, KiSKA's Initial Complaint at ¶ 22. I have previously observed that the wording of the third claim in KiSKA's amended complaint is identical to that of the third cause of action in its initial complaint.

Incorrectly assuming that the Court would consider G&G's motion as one for partial summary judgment, KiSKA included in its opposing papers several "matters" which unquestionably fall outside the pleadings in the case. Specifically, KiSKA submitted three affidavits (with accompanying exhibits) verified Howard Burger, Esq., counsel for plaintiff, Osman Ozcan, Senior Vice President at KiSKA, and Louis Malinowski, a principal and officer of Iron Bridge Constructors, Inc. These affidavits are plainly outside the scope of plaintiff's own pleadings, and therefore I exclude them from consideration on this motion to dismiss. The recitation of facts found in the Background portion of this opinion is taken strictly from KiSKA's amended complaint and the Settlement Agreement.

B.  *Standard of Review on a Motion to Dismiss*

On a motion to dismiss a complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980); *see Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119, 124 (2d Cir. 1991). "[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984) (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A district court must accept plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain*, 478 U.S. 265, 283 (1986), and the allegations must be "construed favorably to the plaintiff." *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). "[A] Rule 12(b)(6) motion to dismiss need

not be granted nor denied in toto but may be granted as to part of a complaint and denied as to the remainder." *Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 115 (2d Cir. 1982).

C.  *Economic Duress under New York Law*

KiSKA's third claim proceeds on the theory that its Settlement Agreement with G&G and the $1.5 million it paid to G&G pursuant to that agreement's terms were exacted under economic duress, so that KiSKA is entitled to void the agreement and recover from G&G most of the money paid under it. In diversity actions, this Court, sitting in the State of New York, generally looks to New York substantive law, including New York's choice of law rules. In the case at bar, the briefs of both parties rely solely upon New York law. In these circumstances, I apply the New York law of economic duress.

In *Kamerman v. Steinberg*, 891 F.2d 424, 431 (2d Cir. 1989), the Second Circuit said that "New York law, which governs the question, establishes the following elements of economic duress: (1) a threat, (2) which was unlawfully made, and (3) caused involuntary acceptance of contract terms, (4) because the circumstances permitted no other alternative." (citation omitted). "The doctrine of economic duress," the Second Circuit has declared more recently, "arises from the theory that the courts will not enforce an agreement in which one party has unjustly taken advantage of the economic necessities of another and thereby threatened to do an unlawful injury." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 122 (2d Cir. 2001) (citations and internal quotation marks omitted). "Under New York law, a contract or release, the execution of which is induced by duress, is voidable." *Id.* (citations and internal quotation marks omitted). In *Austin v. Loral Corp.*, 29 N.Y.2d 124, 130 (Ct. App. 1971), the New York Court of Appeals said: "A contract is voidable on the ground of duress when it is established that the party making the claim was forced to agree to it

9

by means of a wrongful threat precluding the exercise of his free will" (citations omitted). "However, the person claiming duress must act promptly to repudiate the contract or release or he will be deemed to have waived his right to do so." *VKK Corp.*, 244 F.3d at 122 (citations and internal quotation marks omitted).

Applying the standard of review applicable to G&G's Rule 12(b)(6) motion to dismiss KiSKA's claim of economic duress, the questions are whether the allegations of the complaint are legally feasible and thus entitle KiSKA to offer evidence in support of its claim, in which event G&G's motion fails, or whether it is clear that no relief could be granted to KiSKA under any set of facts that could be proved consistent with those allegations, in which event the motion should be granted. I conclude without difficulty that G&G's motion fails.

The elements of an economic duress claim are sufficiently pleaded in KiSKA's amended complaint. KiSKA alleges that G&G's claims for extra compensation should have first been submitted to the DOT for payment; that in any event KiSKA "disputed most of the claims on the merits," Am Compl. ¶ 80; and that G&G threatened, in breach of its contract and consequently unlawfully, to refuse to deliver the bridge components and appurtenances necessary to make the replacement swing span bridge operational. KiSKA sufficiently alleges the economic circumstances that led it to the conclusion that it had no alternative but to sign the Settlement Agreement and pay G&G $1.5 million in order to secure G&G's continued performance of the contract. KiSKA alleges that even if it resorted to legal remedies against G&G, the costs it would incur in finding and activating an alternate supplier would exceed $6 million; KiSKA would be liable to the DOT for $1 million per month in liquidated damages for missing deadlines imposed by the underlying contract; and KiSKA would receive a negative performance rating from the City of New York, jeopardizing

its chances of being awarded future public works contracts; and that there would be danger and inconvenience to the public. On this motion to dismiss, I must accept these factual allegations as true; and the motion can be granted only if I conclude that a finding of economic duress could not be made under any set of proved facts consistent with those allegations. Given the governing New York law, I cannot make that conclusion.

G&G's arguments are unavailing. G&G contends that KiSKA released G&G from liability for all claims arising from G&G's Claim No. 1 and Control House Claim through the Settlement Agreement, and quotes the recitation in the Agreement which "[t]he Parties hereby *voluntarily, freely and with the advice of counsel* enter into." Settlement Agreement at Preamble (emphasis added). G&G observes that KiSKA is represented by an experienced construction attorney, Tony Berman, Esq., and goes as far as to recite the Martindale-Hubbell listing of Berman's law firm. However, regardless of the language of the Agreement or the experience and reputation of KiSKA's representation, if the facts indicate that KiSKA was forced to surrender to the terms of G&G's agreement under conditions of economic duress, G&G cannot prevail on its motion.

Additionally, G&G observes that the parties entered into a non-binding (and ultimately unsuccessful) mediation on the same day that KiSKA filed its initial complaint in this Court. Presumably the purpose of the mediation, which was provided for by ¶ 10 of the Settlement Agreement, was to attempt to resolve some if not all of the issues that are involved in the present litigation. Why, asks G&G rhetorically, would KiSKA go through the trouble and expense of requesting and undertaking a mediation if it was under economic duress? However, it is conceptually possible to agree to non-binding mediation while at the same time asserting a legal claim based upon economic duress, and G&G points to no factual or legal bar to KiSKA proceeding

in that manner.

G&G next argues that under New York law, financial pressures, coupled with inequality of bargaining position do not, without more, constitute duress. While that may be true, in this case KiSKA's well-pleaded complaint *does* allege more--specifically, that G&G made an unlawful threat which caused involuntary acceptance of the terms of the settlement because the circumstances permitted KiSKA no other alternative.

G&G takes issue with KiSKA's failure to obtain the necessary bridge components from other sources. To this end, it cites *Austin Instrument, Inc.*, 29 N.Y.2d at 132, for the proposition that KiSKS *must* have "contacted all the manufacturers whom it believed capable of making these parts," as a necessary element of a claim of economic duress. While *Austin* states generally that to sustain a claim of economic duress "[i]t must also appear that the threatened party could not obtain the goods from another source of supply and that the ordinary remedy of an action for breach of contract would not be adequate," *id*. at 130-31 (footnotes omitted), I do not think that the case goes so far as G&G suggests. In *Austin*, the New York Court of Appeals held that in order to establish economic distress, a party must establish, in addition to the presence of a threat to breach a contract, that "the threatened party could not obtain the goods from another source of supply and that the ordinary remedy of an action for breach of contract would not be adequate." *Id.* at 130-31. Applying those principles to its facts, the Court found that (after respondent had threatened to breach) the appellant's demonstration that it had contacted ten manufacturers in an attempt to obtain substitute service was sufficient to meet this element of economic duress. *Id.* at 132-33.

That the Court found appellant's behavior in *Austin* sufficient to meet that element of a duress claim does not lead to the proposition that *all* threatened parties must behave in an identical

maner. Rather, for purposes of this motion, I find that KiSKA's allegations regarding the difficulties of obtaining G&G's promised materials and services from other sources are sufficient to establish this element. That is all that is required in a Rule 12(b)(6) analysis.

G&G also argues that "KiSKA has not alleged irreparable harm and as such, KiSKA's allegations are insufficient to establish economic duress." Defendant's Memorandum in Support of Motion to Dismiss Plaintiff's Third Cause of Action, Dec. 17, 2004 ("G&G's Memorandum"), at 6. The phrase "irreparable harm" is more commonly referred to as an essential element in an application for preliminary injunctive relief. The cases G&G cites for this proposition do not use the phrase. They stand, rather, for the proposition already discussed, that a party claiming economic duress must show that it could not obtain the promised goods and services from another source. I have dealt with that issue *supra*. Assuming without deciding that an additional showing of irreparable harm is necessary to sustain a claim of economic duress, it is furnished by KiSKA's allegation that if it did not yield to G&G's demands and salvage a portion of the timetable for the project, it would in all likelihood have received a negative performance rating from the City of New York, which would in turn have severe adverse consequences for KiSKA's reputation and ability to receive public contracts.

It is not clear on the present record whether or not G&G had a clear legal right to require payment for the Control House Claim and the Claim No. 1. at the time and in the amounts so demanded. As G&G itself notes, "[t]here is nothing in the Agreement or Addendum between KiSKA and G&G which address payment of Claim No. 1 or the Control House Claim." G&G's Memorandum, at 7. Should G&G ultimately demonstrate that it was entitled on the facts and the law to demand a payment of $1.5 million from KiSKA before delivering the materials and furnishing the

services necessary to complete the replacement bridge project, then G&G's conduct was not unlawful, and KiSKA's claim of economic duress will fail. But that decision is for another and later day, upon a more fully developed record. For the purpose of Rule 12(b)(6) analysis, KiSKA has sufficiently alleged that G&G's threat was unlawfully made.

Finally, G&G asserts that KiSKA waived any claim of economic duress by failing to *promptly* repudiate the Settlement Agreement. The parties signed the Settlement Agreement on October 1, 2004. KiSKA repudiated the Agreement just shy of two months later, on November 23, 2004. In *VKK Corp.*, 244 F.3d at 125, the Second Circuit held that the plaintiff waived his right to sue for economic duress after waiting thirty months prior to challenging the validity of a signed release. The court also noted that "[d]elays as short as six months have been held to constitute forfeiture of the claim." *Id.* at 123, *citing DiRose v. PK Mgmt. Corp.*, 691 F.2d 628, 634 (2d Cir. 1982). In the present case, I find that KiSKA acted sufficiently promptly by repudiating the Settlement Agreement less than two months after signing it.

For the foregoing reasons, defendant's motion to dismiss plaintiff's third claim is denied.

## IV. CONCLUSION

For the reasons set forth, the Court makes the following ORDER:

1. KiSKA's cross-motion to amend its complaint is granted. KiSKA is directed to file and serve an amended complaint in the form attached to its motion papers on or before June 10, 2005. G&G is directed to file and serve its answer within the time provided for by the Federal Rules of Civil Procedure.

2. G&G's motion to admit Gayle LaRece Douglas, Esq., and Elliott Britton Monroe, Esq., to the bar of this Court *pro hac vice* is granted.

3. G&G's motion for a more definite statement with respect to KiSKA's second claim is denied as moot.

4. G&G's motion to dismiss KiSKA's third claim is denied.

5. Counsel for the parties are directed to attend a status conference in Room 17C, 500 Pearl Street, at 10:30 a.m. on June 16, 2005.

It is SO ORDERED.

Dated: New York, New York

      May 19, 2005

                                            CHARLES S. HAIGHT, JR.
                              SENIOR UNITED STATES DISTRICT JUDGE